UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED JAMES MAYLE,<br><br>   Plaintiff,<br><br>   v.<br><br>ERIC HOLDER, et al.,<br><br>   Defendants. | Case No. 14-cv-04072-JSC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Petitioner Alfred James Mayle brings this action under the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., challenging the United States Consul in Lagos, Nigeria's denial of his fiancée's visa petition. The government moves to dismiss for lack of jurisdiction contending that the decision to admit individuals into the United States is an unreviewable discretionary decision assigned exclusively to the Executive Branch. (Dkt. No. 16.) Having considered the parties' briefs and having had the benefit of oral argument on June 24, 2015, the Court GRANTS the government's motion to dismiss.[1] Petitioner has not established that he has a liberty interest in the denial of his fiancée's visa sufficient to overcome the doctrine of consular nonreviewability,

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 18.)

**BACKGROUND**

**A. The Visa Process**

There is a two-step process to apply for a fiancée visa. First, a U.S. citizen must file a Form I-129F ("K-1") visa petition with the United States Citizenship and Immigration Service ("USCIS"). The Secretary of Homeland Security should approve the petition if "satisfactory evidence is submitted by the petitioner to establish that the parties have previously met in person within 2 years before the date of filing the petition, have a bona fide intention to marry, and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival, except that the Secretary of Homeland Security in his discretion may waive the requirement that the parties have previously met in person." 8 U.S.C. § 1184(d)(1).

Second, upon approval, the non-citizen beneficiary of the petition must apply for the nonimmigrant visa abroad through the U.S. Consul. The consular officer "must either issue or refuse the visa," and if the visa is refused, the reason for the refusal must be noted and must be based on legal grounds. 8 C.F.R. § 41.121(a), (b). According to 8 U.S.C. § 1201(g), the visa should be denied if

> (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law.

The government's motion contends that the consular officer can deny the visa petition on the basis that it is not "bona fide," but then must return the petition to the USCIS with a "memorandum providing specific facts supporting that conclusion." (Dkt. No. 16-2 at 11:20-24 (citing U.S. Dept. State, 9 Foreign Affairs Manual 41.81. N6.5).)[2] However, at oral argument, the government conceded that there is no statutory requirement that the consular officer assess whether the relationship is bona fide, but rather the foregoing is "guidance" which is issued to consular

---

[2] This manual is available online at http://www.state.gov/documents/organization/87390.pdf (last visited June 24, 2015), but does not contain the language suggested by the government's brief.

officers.

### B. Petitioner's Visa Process

Petitioner, a U.S. citizen, met his fiancée Beatrice Nkwogu through Ms. Nkwogu's sister who introduced them over the phone in the summer of 2010. (Dkt. No. 1 at ¶ 5.) Ms. Nkwogu lives in Nigeria. Six months later, petitioner traveled to Lagos, Nigeria and met Ms. Nkwogu in person. (*Id*. at ¶ 6.) The couple spent four days together and decided to marry. (*Id*. at ¶¶ 6-7.) Upon returning to the United States, Petitioner commenced the process of applying for a K-1 visa petition to allow Ms. Nkwogu to travel to the United States so that they could marry. (*Id*. at ¶ 7.) Petitioner's application for a visa petition was approved in July 2011, but Ms. Nkwogu's "visa was denied by the consul in Lagos because they said [Petitioner] did not travel to her village." (*Id*. at ¶¶ 7-8.) Petitioner reapplied for a visa petition in July 2011, which was again approved, but the consul in Lagos again denied Ms. Nkwogu a visa, this time because she "failed to convince the Consular Officer that [his] relationship with the petitioner is bona fide." (*Id*. at ¶¶ 11-12; Dkt. No. 1-1 at 5.[3]) The visa petition was thereafter returned to USCIS who subsequently informed Petitioner that because the period of validity for the petition had expired, the petition would not be revalidated and Petitioner would have to apply again for a visa petition. (Dkt. No. 1-1 at 2.) It is unclear what, if anything, has happened with the visa application since Petitioner received notice of USCIS's denial on January 16, 2014.

Petitioner filed the underlying original complaint for a writ of mandamus pursuant to 28 U.S.C. § 1361, or alternatively under the APA, in September 2014. (Dkt. No. 1.) However, Petitioner failed to serve the government until March 2015. (Dkt. Nos. 6 & 16.) The government thereafter filed the now pending motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. No. 16.)

## DISCUSSION

A foreign national has "no constitutional right of entry" to the United States. *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). The Supreme Court "without exception has sustained

---

[3] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Congress' plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Id*. at 766 (internal citation and quotation marks omitted). Thus, under the doctrine of consular nonreviewability "it has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review." *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986). "However, courts have identified a limited exception to the doctrine where the denial of a visa implicates the constitutional rights of American citizens." *Bustamante v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008) (collecting cases). If a visa denial implicates a citizen's constitutional rights, courts may inquire as to whether the decision to deny the visa was made "on the basis of a facially legitimate and bona fide reason." *Mandel*, 408 U.S. at 770. If it is, "courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" the constitutional interests of citizens the visa denial might implicate. *Id.*

In *Bustamante*, the Ninth Circuit recognized that a United States citizen has a protected liberty interest in one's marriage that gives rise to a right to constitutionally adequate procedures in the adjudication of a spouse's visa application, thus triggering *Mandel's* exception to the doctrine of consular nonreviewability. 531 F.3d at 1062. The court considered whether the consular's denial of the petitioner's husband's visa petition on the grounds that "the Consulate 'had reason to believe' that he was a controlled substance trafficker" was facially legitimate and bona fide. *Id*. The court concluded that this was "plainly a facially legitimate reason, as it is a statutory basis for inadmissibility." *Id*. (citing 8 U.S.C. § 1182(a)(2)(C)).

Five years later, in *Din v. Kerry*, the Ninth Circuit considered this question again and sought to provide additional guidance regarding the application of the facially legitimate and bona fide standard. *Din*, 718 F.3d 856 (9th Cir. 2013), *cert. granted*, 135 S. Ct. 44 (2014) and *vacated*, 135 S. Ct. 2128 (2015). The Ninth Circuit ultimately concluded that "the identification of both a properly construed statute that provides a ground of exclusion and the consular officer's assurance that he or she 'knows or has reason to believe' that the visa applicant has done something fitting within the proscribed category constitutes a facially legitimate reason." *Id.* at 861. However, after the conclusion of briefing here, the Supreme Court issued an opinion vacating the Ninth Circuit's

4

decision. *See Kerry v. Din*, 135 S. Ct. 2128 (June 15, 2015). Justice Scalia announced the judgment of the Court and delivered an opinion in which the Chief Justice and Justice Thomas joined concluding that Din did not have a protectable liberty interest as Din did not have a constitutional right to live in the United States with her husband. *Id*. at *2138. Justice Kennedy, joined by Justice Alito, issued a concurring opinion in the judgment and stated that "[t]oday's disposition should not be interpreted as deciding whether a citizen has a protected liberty interest in the visa application of her alien spouse. The Court need not decide that issue, for this Court's precedents instruct that, even assuming she has such an interest, the Government satisfied due process when it notified Din's husband that his visa was denied under the immigration statute's terrorism bar." *Id*. at *2139.

It is unclear how the Supreme Court's decision in *Din* changes the legal landscape. In any event, at oral argument the government conceded that *Bustamante* is still good law; thus, the governing rule here is that a U.S. citizen has a protected liberty interest in the adjudication of a spouse's visa petition. The reason advanced by the consular officer for denying a spouse's visa must therefore be facially legitimate and bona fide. Here, however, the Court need not inquire into the reasons advanced by the consular officer because Petitioner has not established that he has a protectable liberty interest in the adjudication of his *fiancée's* visa petition.

Petitioner contends that under a long line of precedent there is a fundamental right to marry and right to personal choice in matters of marriage. The government counters that the only arguable "right" at stake here is the right to marry in person within the United States as it is undisputed that there are legal procedures available which would allow Petitioner and his fiancée to marry elsewhere and then apply for a visa. As support the government cites to the First Circuit's decision in *Chiang v. Skeirik*, 582 F.3d 238 (1st Cir. 2009).[4] In *Chiang*, the court rejected the argument that a U.S. citizen's rights were implicated by the denial of his fiancée's visa

---

[4] The government also suggests that the Ninth Circuit has refused to recognize a "right to family unity" to reside together in the United States, citing *De Mercado v. Mukasey*, 566 F.3d 810 (9th Cir. 2009). The *DeMercado* court specifically stated that it was "[s]etting aside the question of whether 'family unity' is a constitutionally-protected right," *id*. at 816, although in a footnote it mused *in dicta* that such a right implausible. *Id*. at 816 n.5. In any event, the Court is not relying on *De Mercardo* in reaching its decision.

petition. The court concluded that "[e]ven assuming that a United States citizen has a constitutional right to marry a foreign national, Chiang has always been free to marry [his fiancée] in China, in a third country, or, possibly, in the United States by proxy. There is no authority supporting the view that a United States citizen has a constitutional right to engage in a marriage ceremony in the United States at which the foreign national is present." *Id*. This Court agrees.

Petitioner's insistence that there is no meaningful distinction between spouse and fiancée visas is unpersuasive. Marriage confers a host of responsibilities and benefits on a couple that an engagement does not. *See Obergefell v. Hodges*, No. 14-556, ___ S. Ct. ___, 2015 WL 2473451, at *15 (U.S. June 26, 2015) ("[states] have throughout our history made marriage the basis for an expanding list of governmental rights, benefits, and responsibilities" including "taxation; inheritance and property rights; rules of intestate succession; spousal privilege in the law of evidence; hospital access; medical decisionmaking authority; adoption rights; the rights and benefits of survivors; birth and death certificates; professional ethics rules; campaign finance restrictions; workers' compensation benefits; health insurance; and child custody, support, and visitation rules."). Moreover, anyone can get engaged, but states impose a variety of requirements, including licensing, on couples who elect to marry. *See, e.g.*, *Estate of DePasse*, 97 Cal. App. 4th 92, 100 (2002) (outlining the California statutes governing marriage).

Here, Petitioner's right to marry Ms. Nkwogu has not been infringed; indeed, Petitioner does not dispute that he could marry her in Nigeria at any time or possibly in the United States by proxy. In the cases upon which he relies, in contrast, the individuals were precluded from marrying at all—in *Loving v. Virginia*, 388 U.S. 1, 12 (1967), because they were of different races, in *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978), because one party was behind on child support payments, and in *Turner v. Safley*, 482 U.S. 78, 95 (1987), because one party was incarcerated. As the petitioner in *Chiang*, Petitioner here is actually advocating for a constitutional right to marry his alien fiancé in person in the United States, not the right to marry his fiancé in the first place. Because the consular's decision does not infringe Petitioner's right to marry his fiancée, there is no protectable liberty interest at stake and Petitioner's action is barred by the doctrine of consular nonreviewability.

**CONCLUSION**

For the reasons stated above, the government's motion to dismiss is GRANTED.

This Order disposes of Docket No. 16.

The Clerk shall close the docket.

**IT IS SO ORDERED.**

Dated: July 10, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge